UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| The Estate of Zerihun Wolde, individually and as assignee and Lacks Beach Service, individually and as assignor, | Case No.: 4:23-cv-03710-JD |
| Plaintiffs, | **MEMORANDUM ON JUSTICIABILITY AND LIFTING OF STAY** |
| vs. | |
| Arch Specialty Insurance Company, Arch Insurance Company, Arch Insurance Group, Inc. and Brian McMahon, individually, | |
| Defendants. | |

Pursuant to the Court's August 27, 2024 text order, Plaintiffs submit this memorandum addressing whether the claims or remedies at issue in this case are presently justiciable under Article III of the U.S. Constitution and whether the stay imposed by the Court should be lifted before the underlying appeal is resolved. Plaintiffs' claims are justiciable under Article III and should not be stayed pending the underlying appeal.

Defendants engaged in bad faith and wrongful conduct throughout the life of the underlying case, repeatedly prioritizing their own interests at the expense of their insured, Lack's Beach Service ("LBS"). Their tortious acts deprived LBS of the protection, security, and peace of mind it thought it acquired when it paid approximately $150,000 in insurance premiums to Arch. Defendants' actions caused LBS to suffer numerous damages, including but not limited to a loss of insurance benefits (which include protection, security, and peace of mind), harm to its business reputation, lost earnings and business income, and costs of retaining independent counsel. LBS suffered these damages independent of the excess verdict because Defendants did not handle the defense of LBS honestly and in good faith.

Defendants have made clear that they want this case to be stayed until the underlying appeal resolves because they believe the only consequence of their bad faith is the excess verdict, and they hope to use the self-serving appeal to erase some of their tortious acts. The claims in this case do not depend on the outcome of the appeal and will not be erased even if an appellate court grants a new trial. However, this case will be much more burdensome to litigate if it is stayed until the appeal finally resolves years from now.

Moreover, Defendants are unlikely to prevail in the appeal. They have thrown the proverbial kitchen sink at the Court of Appeals in the desperate hope that one of a laundry list of purported issues, many of which are not even preserved for appellate review, will save them from their own bad faith. But the probability of an appellate court finding LBS was entitled to JNOV—which requires Defendants to show the verdict was not supported by *any* evidence—is low, as is the probability that an appellate court will award a new trial based on any purported evidentiary issue. A stay of this case will effectuate Defendants' desire for delay, but it will not narrow the issues before this Court nor save any judicial resources. The Court should lift the stay and direct the parties to proceed with discovery in this case.

## ARGUMENT

**I.     Plaintiffs' claims are justiciable under Article III of the Constitution.**

Federal courts have subject matter jurisdiction over "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). A claim is a justiciable "case or controversy" "if the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (alteration in original) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Justiciability

2

concepts "often are elaborated into more specific categories of justiciability," including standing and ripeness. *See* Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3529.

"The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citations omitted). To establish constitutional standing, a plaintiff must plead three elements: (1) that it suffered "an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Brown*, 600 U.S. at 561; *see also Cuno*, 547 U.S. at 342.

Ripeness, which addresses "the appropriate timing of judicial intervention" and "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form,'" is a component of the Article III case-or-controversy requirement similar to standing. *Winnie v. D.R. Horton, Inc.*, No. 4:18-CV-01023-RBH, 2019 WL 283647, at *2 (D.S.C. Jan. 22, 2019); *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 724 (4th Cir. 2021). To determine whether a case is ripe, courts must "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Miller*, 462 F.3d at 319 (quoting *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)). A case is "fit" for judicial determination "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* Courts measure the "hardship" prong of the ripeness analysis by considering "the cost to the parties of delaying judicial review." *Id.* (citing *Fort Sumter Tours, Inc. v. Andrus*,

564 F.2d 1119, 1124 (4th Cir. 1977)). Plaintiffs' claims satisfy the Article III justiciability requirements.

### A. Plaintiffs have constitutional standing to pursue their claims.

Plaintiffs have Article III standing because they have pled—and will prove—each of the three elements of constitutional standing. First, LBS has suffered an injury-in-fact. *See Jolly v. Gen. Acc. Grp.*, 382 F. Supp. 265, 269 (D.S.C. 1974) (finding an excess judgment entered against an insured is an injury to the insured's real and personal property); *Schneider v. Allstate Ins. Co.*, 487 F. Supp. 239, 245 (D.S.C. 1980) (same). It has suffered—and continues to suffer—substantial harm to its business reputation, financial loss, lost earnings and business income, risk of insolvency, $3,000,000 in lost insurance benefits, unnecessary legal expenses (including the retention of independent counsel), and the $20,730,000 judgment together with compounding post-judgment interest. Compl. pp. 1–2, ¶¶ 126, 156, 173 (ECF No. 1). LBS's damages are not limited to the excess verdict. As the Court found in its order denying Defendants' motion to dismiss, LBS can maintain its actions for bad faith and breach of contract regardless of whether a new trial is granted. *See* Order Denying Mot. to Dismiss at 2 n.2 (ECF No. 18). LBS has suffered substantial consequential damages, and it lost the $3,000,000 in bargained-for insurance benefits the moment the trial court entered the underlying judgment. The insurance contract did not require Arch to appeal; rather, it makes clear that the bargained-for exchange was $3,000,000 in indemnity up until the verdict:

> **RIGHT TO APPEAL**
>
> We will have the right, ***but not the duty*** to appeal a judgment awarded in a "suit" for injury or damage covered by this insurance if we defend the insured against the "suit" and a judgment is awarded against that insured. If we appeal such a judgment, we will pay all expenses which result directly from that appeal, including postjudgment interest and the cost of appeal bonds. Such appeal expenses are in

4

addition to the limits of insurance. ***However, the results of an appeal will not change the limits of insurance that apply under this insurance***.

*See* Insurance Contract (ECF No. 9-1 at 70) (emphases added). The insuring agreement section of the policy also provides, "Our right and duty to defend will end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A, B or C**." *Id.* at 66. Thus, by the plain language of the insurance contract, Arch does not intend to pay more than the $3,000,000 policy limits despite exposing LBS to an excess judgment. As a matter of law, a judgment for money damages is not stayed pending an appeal of the judgment. *See* Rule 241(b)(1), SCACR; S.C. Code Ann. § 18-9-130. LBS suffered injuries when the judgment was entered, and the appeal does not stay the ongoing consequential damages LBS continues to suffer.

Second, as Plaintiffs' complaint makes clear, these damages were caused by Defendants' unlawful and tortious conduct. *See generally* Compl. (ECF No. 1). LBS continues to incur these substantial damages, which it would never have incurred but for Defendants' unreasonable, bad faith actions. *See id.* Finally, a favorable decision in this case would compensate Plaintiffs for the damages suffered by LBS and would therefore redress the injuries. *See Brown*, 600 U.S. at 561; *Cuno*, 547 U.S. at 342. Accordingly, Plaintiffs have standing under Article III, and the only justiciability question in this case is whether Plaintiffs' claims are ripe.

### B. Plaintiffs' claims are ripe for judicial determination.

Plaintiffs assert four claims against Defendants: (1) bad faith in rejecting the April 13, 2022 settlement demand, in rejecting the August 31, 2022 settlement demand, and in failing to satisfy the excess judgment; (2) bad faith in the selection and retention of assigned counsel; (3) breach of contract; and (4) tortious interference with a contract. *See generally* Compl. (ECF No. 1); Am. Compl. (ECF No. 40-1). Each claim is fit for judicial determination and is "not dependent on

future uncertainties." *Miller*, 462 F.3d at 319; *Steves & Sons*, 988 F.3d at 724. Moreover, LBS will suffer significant cost if the Court delays judicial review, and the hardship prong therefore weighs in favor of lifting the stay and litigating Plaintiffs' claims now. *See Miller*, 462 F.3d at 319.

Plaintiff's claims are fit for judicial review and are therefore ripe. Each of Plaintiffs' claims accrued at the time LBS suffered the harm caused by Defendants' tortious acts. Under South Carolina law, a plaintiff's claim accrues as soon as he has suffered a wrong and some damage from that wrong, even if he cannot yet determine the full extent of the damage. *See Farley v. CSX Transp., Inc.*, 144 F. App'x 962, 963–64 (4th Cir. 2005) ("South Carolina does not allow the plaintiff to wait until he ascertains the full extent of the damage, but instead requires that a plaintiff promptly investigate the existence of a claim when facts and circumstances place the plaintiff on notice."); *Dean v. Ruscon Corp.*, 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996) ("[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial."); *State v. McClinton*, 369 S.C. 167, 173, 631 S.E.2d 895, 898 (2006) (providing a breach of contract claim "accrues at the time a contract is breached or broken").[1] Plaintiffs' complaint makes clear the harm LBS suffered from Defendants' tortious actions. LBS's claims accrued when Defendants engaged in those tortious acts and LBS suffered actual, consequential, and incidental damages, including but not limited to $3,000,000 of lost insurance benefits, unnecessary litigation expenses, lost business income, harm to business reputation, and the risk of insolvency. Plaintiffs' claims based on LBS's injuries are concrete and definite, and they are not dependent on future uncertainties. Their claims have all accrued and are fit for judicial review. *See Roman Cath. Bishop of Springfield*

---

[1] *See also, e.g.*, *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017) (providing a tortious interference claim accrues "at the time a contracting party knows the nature of the injury and the damages").

6

*v. City of Springfield*, 724 F.3d 78, 92 (1st Cir. 2013) (finding a claim is ripe when the plaintiff's allegations were "sufficient to show ***present*** injury" (emphasis added)).

In its August 27 text order, the Court questioned the effect of the underlying appeal on the claims and remedies at issue in this case. The appeal does not render Plaintiffs' claims dependent on future uncertainties, nor does it undermine the ripeness of the claims. Although the appeal could, in theory, result in a new trial, that possibility will not eliminate Plaintiffs' claims nor render them unfit for consideration by this Court.

Importantly, of the extensive damages suffered by LBS, only the $20,730,000 verdict is before the appellate courts. But Plaintiffs' claims are not based solely on the excess verdict. Rather, Plaintiffs' pleadings allege numerous examples of bad faith conduct by Arch and McMahon, which resulted in harm to LBS that includes, but is not limited to, the excess verdict.

An insurer's duty to defend its insured in good faith extends well beyond the duty to settle within policy limits, and an insurer may be liable if it "acts in bad faith to the insured in some respect other than protecting the insured from an excess judgment." *Reeves v. S.C. Mun. Ins. & Risk Fin. Fund*, 434 S.C. 18, 34–35, 862 S.E.2d 248, 256–57 (2021). When an insured buys insurance, it "seeks protection and security from economic catastrophe" and "seeks peace of mind from the fears that accompany such exposure." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986) (cited by the South Carolina Supreme Court in *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 501, 473 S.E.2d 52, 54 (1996)). "Thus, the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.* The implied covenant of good faith and fair dealing requires that "the insurer not provide the promised protection with one hand while destroying the very objects of the relationship

7

with the other." *Id.* at 571. Defendants thus had a duty to act in good faith in ***all*** aspects of the defense of LBS in the underlying case. *Tadlock Painting*, 322 S.C. at 501, 473 S.E.2d at 53 ("Implicit in the holding is the extension of a duty of good faith and fair dealing in the performance of *all* obligations undertaken by the insurer for the insured." (quoting *Carolina Bank & Tr. Co. v. St. Paul Fire & Marine Co.*, 279 S.C. 576, 580, 310 S.E.2d 163, 165 (Ct. App. 1983))).

Defendants breached their obligations to LBS—and caused LBS to suffer damages—in numerous respects independent of the ultimate excess verdict. For example, Plaintiffs allege that McMahon hoodwinked an LBS employee into providing LBS's "consent" to reject the April 13, 2022 time-sensitive settlement communication by orchestrating a phone call in which LBS was left unrepresented. *See* Compl. ¶¶ 66–80 (ECF No. 1); Am. Compl. ¶¶ 66–80 (ECF No. 40-1). McMahon also led the employee to believe her approval or disapproval was required for Arch to respond to the settlement offer, and he lured her into "rejecting" the offer so Arch and McMahon would have the insured's purported informed consent to place itself at extreme financial risk of an excess verdict. Compl. ¶¶ 73–75; Am. Compl. ¶¶ 73–75. Arch and McMahon then rejected the settlement offer based on the manufactured "consent" of LBS. Compl. ¶¶ 79–80; Am. Compl. ¶¶ 79–80. Arch and McMahon succeeded in this tortious scheme because they had, in bad faith, selected and retained assigned counsel who they knew would leave LBS unrepresented at that crucial moment and would not inform LBS that it faced the risk of an excess verdict if it proceeded to trial. Compl. ¶¶ 67, 142–47; Am. Comp. ¶¶ 67, 153–58.

Defendants also violated their standards of care by failing to make reasonable efforts to ensure that LBS possessed information "reasonably adequate to make an informed decision" on rejecting the April 13, 2022 time-sensitive settlement demand and failing to ensure LBS knew the risks of going to trial. Compl. ¶ 102; Am. Comp. ¶ 102. Further, they lied to LBS about the need

for LBS's consent to reject the settlement offer, despite knowing the insurance policy gave Arch exclusive control over that decision. Compl. ¶¶ 104–05; Am. Comp. ¶¶ 104–05. Those acts of bad faith will not be affected by the appeal. Regardless of whether an appellate court awards a new trial, Defendants will remain liable for orchestrating this bad-faith scheme to evade a settlement—and ensure LBS was unaware that it faced any risk—that would have ended the litigation and protected LBS from significant damages independent of the verdict, including reputational damage (caused by, among other things, a public trial), lost business income, lost insurance benefits (including protection, security, and peace of mind), and other damages alleged in the complaint and amended complaint. Compl. pp. 1–2, ¶¶ 126, 156, 173; Am. Compl. pp. 1–3, ¶¶ 137, 167, 171, 210.

Further, Defendants manipulated focus group research data to produce a result that would mislead LBS into believing it did not face the risk of an excess verdict at trial. Compl. ¶¶ 148–56; Am. Compl. ¶¶ 159–67. Defendants are also liable for McMahon's scheme to tortiously interfere with the insurance contract by shifting the in-trial reporting responsibility of assigned counsel from Paul Trainor to Kelli Sullivan—who McMahon retained as additional assigned counsel the night before trial—knowing Sullivan would do his bidding and make material misrepresentations to ensure that Arch's file did not reflect the obvious risk of an excess verdict. *See* Am. Compl. ¶¶ 173–210. Finally, rather than pay the excess judgment, as *Reeves* requires, *see Reeves*, 434 S.C. at 33, 862 S.E.2d at 256, Arch "offered" only the $3,000,000 policy limits as part of a proposal that required its insured to agree to certain conditions before Arch would pay. *See* Aug. 4, 2022 Letter, **Exhibit A**. Thus, it undertook no effort to protect its insured from the consequential damages it caused the insured to suffer. None of these facts, nor the claims or remedies based on these facts, depend on the outcome of the appeal. No ruling from the Court of Appeals will change

the propriety of Defendants' actions, and even the granting of a new trial will not change the fact that LBS suffered substantial damages caused by Defendants' numerous tortious acts and breaches of contract throughout the litigation of the underlying claim.

Moreover, the ability to settle the underlying claim within policy limits has been permanently lost as a result of Defendants' improper conduct. It is now impossible for Defendants to settle the claim on terms as advantageous as the prior opportunities. *See Tiger River Pine Co. v. Maryland Cas. Co.*, 163 S.C. 229, 161 S.E. 491, 493–94 (1931) ("[A]n insurer against liability for accidents which assumes the duty of defending a claim owes the assured the duty of settling the claim if that is the reasonable thing to do, and . . . ***if the insurer negligently makes no serious attempt to settle until matters are in such a shape that the claim cannot be settled as advantageously to the assured as formerly***, the assured may recover of the insurer the loss so occasioned him." (emphasis added) (citation omitted)). The parties now know that an Horry County jury awarded $20,730,000 to the Estate of Zerihun Wolde (the "Estate") for its claims against LBS. That fact alone all but precludes a settlement within policy limits. Defendants had the opportunity to settle within policy limits but failed to do so despite having no good-faith basis to reject the settlement offer. The outcome of the appeal cannot change these facts or the damages suffered by LBS as a result.

Finally, to the extent that the underlying appeal may affect the *amount* of damages LBS suffered, that possibility does not affect the ripeness of Plaintiffs' claims. *See Farley*, 144 F. App'x at 963–64; *Dean*, 321 S.C. at 364, 468 S.E.2d at 647. Plaintiffs' claims are not based solely on Defendants' failure to settle the underlying claim, and therefore the granting of a new trial in the underlying appeal will not eliminate the bad faith, breach of contract, and tortious interference claims altogether. Indeed, this Court recognized as much in its November 21, 2023 order denying

Defendants' previous request for a stay of proceedings: "Even if the Underlying Lawsuit is overturned or re-tried, Plaintiffs could maintain their current causes of action for bad faith and breach of contract." Order Denying Mot. to Dismiss at 2 n.2 (ECF No. 18). Accordingly, the claims have accrued, are not dependent on future uncertainties, and are therefore fit for review.

Delaying litigation of Plaintiffs' claims will inflict a hardship on LBS. Again, courts must consider the hardship created by "withholding court consideration" in determining whether a case is ripe. *Miller*, 462 F.3d at 319. Courts measure the "hardship" prong of the ripeness analysis by considering "the cost to the parties of delaying judicial review." *Id.* If the Court does not allow this case to proceed now, LBS will be left in limbo and unable to recover its damages, while Arch spends years pursuing the appeal for its own benefit in an ongoing, self-serving attempt to delay accountability for its own tortious acts. Discovery in this case will begin in earnest four or five years after the underlying trial ended, when witnesses may become unavailable and the difficulty of proving Plaintiffs' claims will substantially increase.[2] Throughout the delay, LBS will have to bear costs for its independent counsel and will be unable to rebuild its business reputation or recoup the substantial losses it has already incurred.

Plaintiffs have satisfied the Article III case-or-controversy requirements. Their claims are fit for review now, and a multi-year delay in this case while the underlying appeal climbs through the appellate courts will inflict a substantial hardship on LBS. This Court should lift the stay and proceed with this case.

---

[2] The Court has already determined these considerations weigh against staying Plaintiff's claims. ECF No. 18 at 2 n.2 ("Plaintiffs validly contend they may suffer prejudice if the proceedings are stayed until the appeal of the Underlying Lawsuit is resolved, which may take years, because 'critical information' may be lost and because LBS continues to suffer on-going unresolved harm.").

## II. The Court should lift the stay it imposed in its August 27 text order.

Although this Court has inherent discretion "to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), the Court must weigh competing interests and consider several factors in exercising its discretion, *see Brown-Thomas v. Hynie*, No. 1:18-CV-02191-JMC, 2019 WL 1043724, at *3 (D.S.C. Mar. 5, 2019). Moreover, the proponent of a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *Clinton*, 520 U.S. at 708. In deciding whether to stay legal proceedings, district courts consider "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed." *Brown-Thomas*, 2019 WL 1043724, at *3. Clear and convincing circumstances do not justify a stay in this case, and the factors enumerated in *Brown-Thomas* favor lifting the stay.

The first factor, potential prejudice to Plaintiffs, supports lifting the stay. The underlying appeal may take several years to conclude. Over the course of those years, memories will fade, documents and emails may be deleted or destroyed, critical information will be lost, and witnesses may become unavailable. *See, e.g.*, *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 463 (D. Md. 2020) (denying a party's request for a stay and noting "[t]he longer that discovery . . . is delayed, the risk grows that memories will fade and evidence may become stale"). LBS continues to suffer ongoing harm described above and in the complaint, and the granting of a new trial by an appellate court will not alleviate LBS's exposure to an excess verdict.

Lifting the stay will not impose any hardship or inequity on Defendants, who are not parties to the underlying appeal. The only parties to the appeal are LBS and the Estate, both of which

request that this Court lift the stay and proceed with this action. Although Defendants have complained at length that discovery will impede their ability to prosecute their self-serving appeal, Plaintiffs have refuted their arguments in prior filings. *See* Memo in Opp. to Mot. to Dismiss at 28–31 (ECF No. 10); Memo in Opp. to Am. Mot. to Dismiss at 6–7 (ECF No. 14); Resp. to Arch Replies to Mot. to Quash at 1–2 (ECF No. 34); *see also generally* Memo in Opp. to Thompson and Hall Booth Mot. to Quash (ECF No. 30); Mot. to Compel (ECF No. 46); Reply in Supp. of Mot. to Compel (ECF No. 48). Further, LBS is entitled to the materials and information it seeks from Defendants in discovery in this case even in the absence of litigation. It is entitled to access and review the claims file and other information that Defendants assembled on its behalf to examine how Defendants failed to protect it. Defendants are attempting to use this lawsuit and the underlying case as a shield to avoid revealing to their own insured how they prioritized their own financial interests over the insured's. LBS has a right to that information whether this case proceeds or not. Lifting the stay thus will not impose any hardship or inequity on Defendants. The second factor therefore weighs in favor of lifting the stay.

Finally, judicial resources will not be saved by a stay of this case. LBS has suffered damages—and continues to suffer damages—regardless of the outcome of the appeal. Judicial resources would be conserved by proceeding with this lawsuit now while memories are fresh, documents are at the parties' fingertips, and witnesses are available. A stay will only make discovery more burdensome and labor-intensive in the future and will likely require more involvement from the Court in discovery disputes.

**III.    In the alternative, the Court should proceed with discovery but stay any trial date until the appeal is resolved *if* Arch agrees to pay the excess judgment and consequential damages if the underlying judgment is affirmed.**

If the Court has any concern about proceeding to trial in this case while the underlying appeal is pending, it should not stay this case in its entirety. A new trial in the underlying case will not eradicate Defendants' wrongdoing or the damages suffered by LBS. To the extent the ***amount*** of damages could be affected by the outcome of the appeal, that possibility does not support a stay of the entire case. Instead, the Court should lift the stay for purposes of discovery and allow the parties to proceed. Plaintiffs will agree to a scheduling order that provides the case cannot be called for trial until the South Carolina Court of Appeals has ruled on the underlying appeal if, in exchange, Arch agrees to pay the excess judgment plus other consequential damages if the judgment is affirmed.

## CONCLUSION

Plaintiffs' claims are justiciable under Article III of the U.S. Constitution, and the Court should lift the stay and allow litigation to proceed.

                                **McLeod Law Group, LLC**
3 Morris Street, Suite A
Charleston, SC 29403
Tel. 843-277-6657
Fax 843-277-6660

*s/ W. Mullins McLeod, Jr.*
W. Mullins McLeod, Jr.
H. Cooper Wilson, III

and

G. Murrell Smith, Jr.
Smith Robinson
126 N. Main Street
Sumter, SC 29151
Tel. 803-778-2471

Attorneys for the Plaintiffs

September 24, 2024
Charleston, South Carolina